IOWA POWER COMPANY, Plaintiff and Appellant, v. ANDREW HOOVER, ET AL., Defendants and Appellees.

**Water powers:** DAMS: PRESCRIPTIVE RIGHT. A prescriptive right to maintain a dam in a stream will not confer the right to maintain it at a greater height than that of the original dam as used for the prescriptive period.

**Same:** LEGISLATIVE GRANT: EMINENT DOMAIN: COMPENSATION. A territorial grant to construct and maintain a dam in a stream would not authorize the flooding of private property without compensation; especially where the grant itself provided that nothing therein should authorize the flooding of such lands without the owner's consent.

**Same:** CONDEMNATION PROCEEDINGS: OBJECTIONS. Pursuant to the statutes providing for the erection or raising of a dam the plaintiff filed a petition in the district court praying a license to restore and rebuild a certain dam, alleging a territorial grant authorizing the original erection and maintenance, and also alleging that the dam as originally built had been partially washed away. It named certain parties as the only persons who would be affected by an overflow of lands, and that they had waived condemnation proceedings and consented to the granting of the license asked. Other and different parties voluntarily appeared and filed objections to granting the petition on the ground that their lands would be flooded and the proceeding did not contemplate the payment of damages therefor. *Held,* that as plaintiff was seeking a license to reconstruct the dam without the intervention of a sheriff's jury to assess the damages, the objections, though somewhat irregular, were not prematurely filed; especially as plaintiff, though asking an assessment by way of an amendment, did not pay the damages assessed, but relied solely upon the territorial grant.

**Same:** INJUNCTION: JURISDICTION. Where defendants claimed that plaintiff had reconstructed the dam in question, pending proceedings to obtain a license to do so, without authority and without payment of damages for overflowed lands, refusal to strike defendant's prayer for an injunction against its maintenance at an increased height, the motion being based on the ground that it was a special proceeding and the court had no jurisdiction to grant an injunction, was not erroneous; as the plaintiff had abandoned a condemnation

of the land and payment of damages, and the parties had treated the proceeding in matters pertaining to the trial as an equitable action.

**Same.** The remedy of parties whose lands have been overflowed by the raising of a dam to a greater height than it had previously been maintained under a prescriptive right is not confined to an action for damages, but they are entitled to an injunction restraining its maintenance at such added height.

**Same:** INJUNCTION: PARTIES. Different parties may join in an action to restrain the unauthorized maintenance of a dam at such height as floods their lands, though not affected alike.

**Same:** CONDEMNATION: ORDER FOR ASSESSMENT OF DAMAGES: PREJUDICE. If this proceeding was one for condemnation of property and not within the jurisdiction of the court until after an assessment of damages, an interlocutory order of court requiring plaintiff to have an assessment made, or in case of failure to do so then ordering a removal of the dam, was not prejudicial to plaintiff; it not having been then determined whether plaintiff was entitled to rebuild the dam to any height.

**Same:** INJUNCTION: DECREE: INDEFINITENESS. When a court of equity has once obtained jurisdiction of a cause it will retain it until the controversy is finished and complete justice done between the parties. Thus where the sheriff was ordered to remove that part of a dam rebuilt without authority to a greater height than originally built, and for a certain distance below the new part, which, under the evidence would seem to reduce it to its original height, a further provision of the order that if in doing so it appeared from the work that such was not the proper height then application might be made for a supplemental decree, was not erroneous because indefinite and leaving the matter for the determination of the sheriff.

**Same:** INJUNCTION: PARTIES. It is only where the controversy between the parties before the court cannot be determined without the presence of other parties that the court has authority to order other parties brought into the case. Thus a mortgagee of property, upon which a dam was rebuilt without authority to a greater height than originally constructed, was not a necessary party to an action to enjoin the maintenance of the dam at the added height. As the mortgagee was not claiming a right to reconstruct or maintain the dam, the controversy could be determined without its presence.

*Appeal from Henry District Court.*—Hon. W. S. Withrow, Judge.

## Monday, June 22, 1914.

There are two appeals, the first from an interlocutory decree, and the second from a final decree which ordered the sheriff to reduce the height of a dam and abate the nuisance caused by its construction and maintenance above the height authorized. The cause was tried as in equity, and there was a decree for defendants upon their equitable answers. The facts will more fully appear in the opinion. The two appeals were submitted together in this court. The plaintiff is the appellant.—*Modified* and *Affirmed.*

*Blake & Wilson,* and *Utt Bros.,* for appellant.

*J. C. McCoid, F. S. Finley, R. S. Galer* and *Hughes & McCoid,* for appellees.

Preston, J.—There is a large record, and it is an unusual record in some respects. Appellant calls defendants' pleadings omnibus or blunderbus pleadings, while appellees say of plaintiff's that plaintiff seemed to be in doubt as to what it really wanted, and that it has shifted its position more than once during the progress of the proceedings, and that it has abandoned the position it first took. This last proposition is conceded by the plaintiff.

Many questions were raised and determined in the district court which are not before us, but they have all been elaborately argued. The trial court found against defendants as to some of these points, and such have been argued, though defendants have not appealed. Defendants were granted substantially all the relief asked, although there was some claim that plaintiff had no right to maintain the dam at all. Other points have been argued, which are not now in the

case, and as to some of these it is so conceded. We account for these matters because of zeal of counsel, and we do not refer to them so much by way of criticism as to show the real situation. Nevertheless we have found the record decidedly confusing. It is necessary to a proper understanding of the situation that the pleadings and record be set out somewhat in detail.

On March 10, 1911, plaintiff filed its petition, stating in substance that it owned a tract of four acres on one side of Skunk river and two acres upon the other side, which tracts were particularly described; that such land was purchased by it, also the milldam between and connecting said two tracts, the foundation to the mills, the dam abutments, and all dam rights, rights of flowage, and all rights appurtenant thereto; that Skunk river is a nonnavigable stream; that in the year 1839 Robert Wilson was the owner of the above-described pieces of land, and that in that year the Legislature of the then territory of Iowa, by special act, granted to him, to his heirs or assigns, permission to build and maintain a dam on said river between said parcels of land; that immediately after said Wilson received said grant he erected a dam seven feet ten inches high across the river at said point, and he, his heirs and assigns, maintained said dam until about the year 1904, utilizing the same for the generation of power and for the operation of machinery; that during all of said time the dam caused the water to back up said river, and none of the owners of property along the river ever denied the right to so back the water up said stream; that through successive conveyances of the above-described real estate it has acquired all the rights originally granted to the said Wilson by said act, and that it has acquired all the rights of said Robert Wilson, his heirs and assigns, acquired by reason of having backed the water up said river; that about the year 1904 the dam was partially washed away, and that plaintiff now desires to rebuild or restore said dam to its original height, to wit, seven feet ten inches, for the purpose of establishing and

operating a hydro-electric plant to produce electricity and supply the general public; that the building of said dam to said height will not overflow any of the lands bordering on said river above the dam, and the water so backed up will not leave the banks of the river; that neither the dwelling house, outhouse, garden, nor orchard of any person owning land along the banks of the river will be overflowed or injuriously affected; that Deborah Beal, D. C. Curl, James Shepherd, Ethel Laird, C. E. Dusenberry, Andrew Hoover, and J. L. Virden own lands along the banks of said river above the dam; that all said parties have executed written instruments, wherein each of them has waived condemnation proceedings and statutory notices, and consents that this court may, in any proceeding brought by N. E. Utt, his heirs and assigns, grant a license to rebuild or restore said dam and maintain it to its former height of seven feet ten inches, except Ethel Laird has executed a similar instrument wherein she consents that this court may grant such a license in any proceeding brought by plaintiff; that no other person or persons own land along or near the banks of said Skunk river that will be overflowed or injuriously affected by reason of building said dam to said height; that such waivers and consents have been assigned to plaintiff; that by reason of the facts alleged as aforesaid plaintiff has the right to rebuild or restore said dam to the height of seven feet ten inches, and to cause the water to back up said stream, and, in addition to the rights it now possesses, it asks this court to grant unto it a license to restore and rebuild said dam across said river between the lands so owned by it to the height of seven feet ten inches, and for such other order or relief as the court may deem just and proper to grant.

On March 13, 1911, Emiline A. Wright filed objections to the petition, and states that she enters her appearance as a party defendant, and files objections to the granting of a license to plaintiff, which objections are substantially as follows: That she is the owner of lands lying upon the Skunk river immediately north of the site of the proposed dam;

that the lands she owns would be affected by said dam causing
the water to back up and overflow same if said permit is
granted; that the plaintiff has requested this defendant to
file a waiver and a written consent to construct this dam, but
this she has refused to do; that no jury has been called out
to assess her damages, as provided by law; that this court has
no jurisdiction of this cause until the preliminary steps have
been followed, conferring jurisdiction upon this court; that
Skunk river is a navigable river, and the plaintiff has no
license, permit, or authority to construct a dam across same;
that the old dam that existed at the site where plaintiff is
about to construct a dam has long since been abandoned, and
was abandoned for more than one year prior to the plaintiff's
attempt to rebuild same; that plaintiff is raising said dam
higher than it has been for many years, without any right or
authority at law; that the plaintiff is now at work constructing
said dam, and, if permitted to continue, it will greatly inter-
fere with the land of this defendant; that there are many
others along said river whose land will be affected by the
building of said dam, and whose consent has not been procured,
and there have been no steps taken to appraise their damages,
as provided by statute. The defendant asks that no license
be granted until her damages have been appraised, as in the
manner provided by law. Defendant further asks that a
writ of injunction issue against the plaintiff, enjoining it from
constructing said dam, and that a temporary writ of injunc-
tion issue until the final hearing of this action, enjoining them
from constructing said dam and interfering with the natural
flow of the waters of said river, and for such other and further
relief as to the court seems equitable and just.

On April 20, 1911, one Beck entered his voluntary appear-
ance in said action as defendant, and filed an answer to the
petition of plaintiff, alleging some of the matters contained in
the objections filed by Emiline A. Wright, and stating further
that he denies all allegations of the petition not admitted,
denies that the parties named as defendants in plaintiff's

petition are the only parties interested, that Skunk river at the point in question is a navigable stream, that plaintiff is attempting to construct, and is constructing, a dam across said stream, and, unless restrained by this court, will construct the same to the height of seven feet ten inches; that for many years prior to 1904 a dam was maintained at said place, but this defendant denies that said dam was ever constructed or maintained to the height of seven feet ten inches, as plaintiff proposes to construct it; that said dam was taken out during the year 1904, and was abandoned at said time, and has never been reconstructed or repaired, and plaintiff has no right, license, or privilege to construct a dam at said place by virtue of any ancient right; that plaintiff has not obtained any license from the state of Iowa to construct a dam, nor has it had any condemnation proceeding, as provided by law, for the privilege of constructing said dam; that a large amount of the land owned by this defendant, which lies a short distance above the proposed dam, is low-lying land, and will be overflowed and affected, and the construction of said dam as now proposed will be an irreparable injury to about thirty acres of this defendant's land. Defendant asks that plaintiff's application for license to construct a dam be denied, and that, by way of affirmative relief, the court grant a permanent injunction against the plaintiff, enjoining it from constructing said dam or in any way flooding said land belonging to this defendant, and for such other and further relief as to the court may seem equitable in the premises.

On April 22, 1911, one Barton entered his appearance as a party defendant, and filed answer and objections to the granting of license to plaintiff on substantially the same grounds as contained in the objections and answer heretofore referred to.

On May 15, 1911, plaintiff filed the following reply to the answer and objections before set out: Therein it denies all allegations, except such as are admitted; denies that said

parties are necessary parties in this action; denies that their lands are or will be in any way affected by the dam under construction; alleges that it began the construction of said dam and power house in the latter part of October, 1910, and has continuously been engaged in the construction thereof since said time, expending large sums of money, and that said plant is now nearing completion; that the parties heretofore referred to, answering and objecting, have had knowledge of the construction of said dam from the time of the commencement, and have stood by and acquiesced therein and made no objection prior to the filing of their appearance herein; that this is a special proceeding under the statutes relating to the construction of dams, and relief by injunction cannot be granted to said defendants in this proceeding; that the plaintiff and its immediate grantors have acquired a prescriptive right to build and maintain said dam at its present height against all of said defendants, and any right to damages on account of injury to the land owned by said defendants is barred because of the statute of limitations; that under a charter granted by the territory to one of the grantors of plaintiff, and assigned to plaintiff, it is entitled to build and maintain said dam at its present height; that the present dam is not higher than the former dam, but is maintained at the same height; that the right to build and maintain said dam was not acquired by statutory proceeding for a license from the court, and such license was never issued, and none is now claimed, and hence the provision as to abandonment of such right acquired by license does not apply. Wherefore plaintiff asks that the answers of each of said defendants be dismissed, and that the plaintiff have the relief demanded in its petition.

It appears that there was a preliminary trial of some kind on some feature of the case, for the abstract shows that on May 16, 1911, a trial was had in said court before Judge Smyth, and the following order entered: The trial of this cause having been adjourned until this morning, the same is

resumed, and, upon hearing, parties seeking to be made defendants are found to be proper parties defendant. The record does not show any exception to this order.

On September 23, 1911, plaintiff, by leave of court, filed an amendment to its petition, which states that the amendment is made before any order has been made by the clerk of the court directing the sheriff to summon a jury for the purpose of viewing the premises and appraising the damages, and states that it has added as defendants the parties who had theretofore filed answer and objections, and describes their land, and states further that the plaintiff has, since the filing of the original petition, rebuilt the same therein referred to, to the height of the old dam, and now desires to increase the height of said dam by two feet for the purpose before stated, and that the plaintiff has a right to maintain the dam at its old height, both by prescription and assignment of the charter rights granted to Robert Wilson in 1839, as alleged in the original petition; that the lands of defendants touch Skunk river above the dam referred to in the original petition, but that they will not be overflowed or injuriously affected by increasing the height of said dam two feet above the old dam, but that plaintiff is advised that some of the defendants claim that the raising of the dam two feet above the old dam will injuriously affect their said lands, and for that reason it becomes necessary to summon a jury in the regular way, as provided by statute, for the purpose of legally ascertaining whether said lands, or any of them, will be damaged by building said dam two feet higher than the old dam, and, if so, in what amount. Wherefore plaintiff prays that, in addition to the right it already has, it be granted a license to increase the height of said dam at said point two feet above the height of the old dam, and to maintain said dam at said point at said increased height, that a jury be summoned in the way provided by statute for the purpose of ascertaining whether said lands of said defendants, or any of them, will be damaged by raising and maintaining said dam two feet

above the height of the old dam, and, if so, in what amount damages will be sustained, and for such other relief as the court may deem just and proper to grant.

On October 23, 1911, defendant John L. Virden filed objections to the license, and sets up some of the matters contained in prior objections and answers, describes his own land, and says that some time during the summer of 1911, and after the time when he signed the written contract exhibited by plaintiff in his petition, said company raised the height of said dam above its former level by adding thereto solid concrete masonry, which will have the effect of raising the height of the water. He further says that plaintiff has not obtained from this court any franchise or permission for the erection of said addition to said dam, and has no right, either by prescription or conveyance, to increase the height of said dam above its former level, and that he has not given plaintiff his consent for any such erection, and plaintiff has not paid the defendant any sum whatever as damage to defendant's land as herein set forth, and further says that no such damages have been assessed. He alleges that the statute permitting the erection and maintenance of said dam is unconstitutional, and alleges that the action of plaintiff in raising the height of said dam is wholly illegal and void, that so raising the dam will injuriously affect the lands belonging to him by causing them to overflow and by preventing the natural and normal drainage from said lands, and will render parts thereof wholly useless. Wherefore he prays that the license or permission prayed by plaintiff be denied, and that plaintiff may be directed, by mandatory writ of injunction, to reduce the height of said dam, and remove the same entirely from the river.

On the same day similar objections were filed by Andrew Hoover and a number of other persons similarly situated.

On October 26, 1911, plaintiff moved the court: (1) To strike out all objections of the defendants on the ground that they have been prematurely filed. (2) To strike out from the

prayer of all the objections and answers that part asking for an injunction; this being a special proceeding, and the court having no jurisdiction in this cause to grant such relief. The motion was overruled. It will be observed that this motion was filed after plaintiff had filed a reply to at least some of the objections and answers, but appellees make no point as to this.

On October 31, 1911, the plaintiff filed a motion as follows: In this cause, the court having decided that the plaintiff's applications for license will not be heard or tried, and that the case will be retained for hearing on the matter of injunction, the plaintiff moves the court to separate the said causes of action as to the matter of injunction, for the reason that there is a misjoinder of causes of action on the part of those who in the prayer to the answer ask for an injunction, and also moves the court to require each of said defendants so asking to file separate petitions, each including such cause. or causes of action as by law provided.

This motion was overruled, and on the same day the court made an interlocutory decree as follows:

### Interlocutory Decree.

Now, on the 31st day of October, 1911, it being the twenty-seventh day of the regular September term of this court, this cause coming on for hearing by agreement of counsel for the purpose of an interlocutory decree, it is found as follows: That the averments of the objections of the defendants as on file in this case as to substantial damages resulting from the increased height of the dam over the height of the original dam are by agreement taken to be true, without a finding that any particular one of the said named defendants has suffered damages; that question being left open for the further determination by the proper body. The court being in doubt as to its right to hear at this time the constitutional question raised as to the right of the plaintiff to institute and maintain condemnation proceedings for the purposes stated in the petition, and also as to the question of the right of the plaintiff as a foreign corporation to

exercise the right of eminent domain in this case, such questions and the right to be heard upon the same are hereby reserved as questions hereafter to be presented in the case; and no provision of this decree, nor any steps which may hereafter be taken by either of the parties hereto, shall in any way operate against the right of the parties to be heard upon these questions, and upon the question as to whether the plaintiff has the right to build and maintain the dam at the height of the original or old dam without compensation to property owners. And with such finding of facts, and it being undisputed that the plaintiff has not procured, by the methods fixed by statute, the assessment of damages and the condemnation of the lands, and has not yet paid any damages resulting from such condition, it is therefore ordered, adjudged, and decreed that mandatory writ of injunction issue against the plaintiff, directing it within thirty days from the signing of this decree to abate the conditions resulting in the damage to the defendants, unless within such time the plaintiff shall by proper proceedings by way of condemnation have determined, and pay or secure, the damages, as required by law.

And the question as to whether the plaintiff has the right to maintain a dam at the height of the original or old dam without compensation to property owners not yet being determined, it is further provided that the sheriff's jury, if such be called out by the plaintiff to determine the damages to property owners resulting from such construction, shall assess damages upon the basis of the damages which have resulted from building the dam to its present height from the river bed, and also the damages which have resulted from the increased height of the dam above the level of the old or original dam. And plaintiff, if it elects to pay or secure as provided by law the damages so assessed, shall pay or secure the total amount of the highest assessment so made. If after such assessment the plaintiff shall elect to maintain the dam at its old height only, and not at its present height, it may then pay or secure the damages assessed on that basis. And if the money is paid to the sheriff it shall remain in his hands, subject to the further order of this court. And if upon the expiration of 30 days the conditions herein made have not been complied with, the sheriff of Henry county, Iowa, shall forth-

with proceed to abate the cause resulting in the damages to defendants.

The costs of this day's proceedings, including the attendance of the witnesses, are taxed to plaintiff. All parties except.

                        W. S. WITHROW, Judge.

On November 3d, plaintiff, by leave of court, filed its second amendment to petition, and alleges that it has been duly authorized to transact business in the state of Iowa, and is entitled to all the rights and privileges of a domestic corporation; that since the filing of the original petition the plaintiff has reconstructed the dam therein referred to, and has built the same higher than the old or original dam, the crest of the dam as it is now constructed being nineteen and twenty-seven hundredths feet below the top of the coping of the northeast pier of what is known as the Oakland highway bridge over Skunk river; that since the construction of said dam to its present height Virden, Hoover, Palmer, three Bartons, White, Watkins, Frame, and Laird have filed objections herein, and that plaintiff makes all of said objectors parties defendant, and reaffirms all the allegations of the original petition, and the first amendment, as against them, except as modified by this second amendment, and describes the land owned by each of said parties, and alleges that none of the aforesaid lands of any of the objectors and defendants will be overflowed or injuriously affected by maintaining said dam at the height of the original dam, nor would they be so affected by maintaining the dam at its present height, and further states that, as said objectors and defendants, however, claim that their aforesaid lands will be overflowed, or otherwise injuriously affected, it becomes necessary to summon a jury in the manner provided by statute for the purpose of legally ascertaining whether the aforesaid lands, or any of them, will be so overflowed or affected by maintaining the dam at its present height. Wherefore plaintiff prays that, in addition to its other rights, it be granted a license to maintain a

dam across Skunk river at its present height, that a jury be summoned in the manner provided by statute for the purpose of ascertaining whether the lands of objectors and defendants, or any of said lands, will be overflowed or injuriously affected by said dam, that said jury be required to assess damages upon the basis of the damages which have resulted from building the dam at its present height from the river bed, and also the damages which have resulted from the increased height of the dam above the level of the old or original dam, and also to ascertain whether the dwelling house, outhouse, orchard, or garden of any defendant will be so affected, etc.; and plaintiff prays for such other and further order and relief as the court may deem just and proper.

Thereafter the clerk of the district court issued an order, with the petition and first and second amendments thereto attached, commanding the sheriff to impanel a jury to assess the damages suffered by the persons who were made parties defendant in the petition and amendments, and on November 29, 1911, the sheriff made return on said writ and filed the same with the clerk, together with the findings of the jury. The plaintiff deposited $350, the amount assessed by the sheriff's jury, for the right to maintain the dam at its original height, but did not pay or secure the damages found by the jury for the additional height of the dam above the old one.

On November 14, 1911, J. J. O'Laughlin, E. E. Scott, and F. S. Finley voluntarily appeared as defendants, and filed separate answers, and asked leave to defend, and set up similar objections to those set out in prior answers and objections, alleging that they own land which would be affected, and alleging further that plaintiff has erected a dam at the point in question, raising the water at said point something over eleven feet, which backs the water up Skunk river for ten or twelve miles; that it is a trespasser upon said land; that said power company is a nonresident corporation, and as such has no power to exercise the right of eminent domain in Iowa; that the land is not taken for a public purpose; that

plaintiff is a company without any means and without any property of any kind from which the defendants could recover damages, and, if plaintiff is permitted to back said water upon defendants' land, defendants will have no adequate remedy at law as against said company. They ask a mandatory injunction, and that plaintiff be restrained from continuing said nuisance, and for other relief.

On February 13, 1912, the cause coming on for consideration by the court in the matter of assignment for hearing, the parties respectively being represented by counsel and agreeing thereto, it is ordered that the cause be assigned for trial on its merits on the 4th day of March, 1912, and that upon said hearing the court shall determine fully all questions raised in said case, with this understanding and reservation, at this time made and agreed to by counsel, that no finding, order, judgment, or decree which may be by the court under said proceedings then made shall have any effect towards superseding or rendering without full force the interlocutory decree heretofore entered by this court in this case in the September term, 1911, and that, if appeal is taken by either party from the final decree, such appeal shall cover only the questions raised in said hearing, and if either party desires to avail themselves of the right to appeal from the interlocutory decree, such must be done independently.

On March 4, 1912, the cause came on for trial and was tried as an equitable action. At the commencement of the trial, an attorney for plaintiff stated:

Plaintiff concedes that, if the court should hold on the final determination of this case that the plaintiff has no right to maintain a dam at the point in question to the height of the old dam, either by charter, prescription, or otherwise, then in that event the defendants are entitled to an injunction against the plaintiff, enjoining it from maintaining the dam.

It was suggested that counsel would submit a form of concession by the next morning, but nothing further seems to

have been done about this. An attorney for the defendants stated:

The defendants waive the matter of introducing testimony to show the amount of damages, or that the defendants are damaged by reason of the erection of the dam, and agree that if the plaintiff, at the time it built the dam in question, had any right to build the same at the height of the old dam, either under charter right or by prescription, that the same would be damaging to the defendants.

This concession by defendants' attorney was adopted.

The grant to Robert Wilson, referred to in the petition, and which was offered in evidence, provides:

Section 1. Be it enacted by the council and house of representatives of the territory of Iowa that Robert Wilson, his heirs or assigns, are hereby authorized to construct a dam across Skunk river, in Henry county, in section 24, etc., at the seat now occupied by said Robert Wilson; said dam shall contain a convenient lock, not less than seventy-five feet in length and fifteen in width, for the passage of steam, keel, flatboats, and rafts and other water craft.

Section 2 provides for keeping the lock in repair.

Section 3 provides for a penalty for destroying the dam or lock.

Section 4. Nothing herein contained shall authorize the individual named in this act, his heirs or assigns, to enter upon and flow the lands of any person, without the consent of such person; and he shall remove all such nuisances as may be occasioned by the erection of said dam which may endanger the health of the vicinity.

Section 5. The Legislature of the territory, or state, may at any time alter or amend this act so as to provide for the navigation of the said river.

Evidence was introduced by both sides, and the findings of the trial court as to the facts are sustained by the evidence. We shall not further refer to this matter, because the errors assigned do not relate to this feature of the case. There is some

contention by plaintiff in argument that the finding of the trial court as to the height of the dam as first rebuilt or constructed by plaintiff is contrary to the evidence; but we think it is not seriously so contended, and, at any rate, as we have said, the finding of the trial court is abundantly sustained by the testimony.

The testimony was concluded and the cause taken under advisement by the court, and on April 5, 1912, about four weeks after the submission, counsel for plaintiff asked leave to file an amendment to the petition, which was read to the court. The court stated that:

The cause was finally submitted for decision about four weeks ago, and the court is now ready to pass upon the questions presented by the pleadings and the evidence and the arguments of counsel, and is of the opinion that this amendment is offered too late, though it recognizes the rule, which the statute says is a fair and just rule, that amendments may be received at any time within the discretion of the court before final submission of the case.

The amendment was marked as an exhibit, and the proposed amendment simply asked to strike out the words "non-navigable stream" wherever the same appeared in the petition, or amendments, and to insert in lieu thereof the words "water course," also to strike out all that part of the prayer asking that a license issue to the plaintiff to reconstruct and to increase the height of the dam, and it prayed as in the original petition and amendments.

Counsel for plaintiff then asked leave to file an amendment to reply, raising the question of the right of the bondholders to be heard. Whereupon the court stated:

I do not now desire to reopen the case. It does not appear in the pleadings anywhere. I am only acting on those things which are presented, and if counsel have overlooked the fact of presenting this matter, why, I expect the responsibility is theirs, not mine.

Mr. Utt: You must remember that this knowledge was in the possession of the defendants, as well as the plaintiff.

Court: I am not stating where the criticism should lodge; it belongs somewhere.

Mr. Utt: It belongs to all of them, I think; it belongs to the plaintiff as well as the defendants, but the defendants more than the plaintiff; they are the ones to bring in these parties. They are seeking, to a certain extent, affirmative relief, and before they ask what they are asking here should, in all justice, bring in all the parties that were involved.

The court stated that the reference to the trust deed, or mortgage, referred to in the abstract in evidence, was not called to its attention at the time of the argument of the case, and that the amendment was offered too late. The proposed amendment to reply was identified by the reporter, but not permitted to be filed by the court.

Court: Do you appear for the trustees?

Mr. Utt: I do not. I am appearing here simply to make a suggestion to the court, and that this record might be made.

Court: There is no appearance on the part of the bondholders at this time.

Mr. Utt: There is no appearance so far as I know. I know they are making inquiry of us in regard to the matter. Now, we ask to offer evidence as to the value of this property.

Court: The offer is overruled.

Mr. Utt: To show that the property has cost in excess of $140,000. I also desire to offer evidence to the effect that there are now outstanding—that there were issued by the Central Trust Company, as trustee, certified and duly delivered to the plaintiff, the Iowa Power Company—$184,000 in bonds, and these bonds, $81,400 of them, have been sold.

The offer was denied.

Mr. Utt: Because of the present condition of the record, we object to further proceedings in this case until the other parties are brought in and have an opportunity to be heard, because it is in contravention of the Constitution of the state

of Iowa, and the fourteenth amendment to the Constitution of the United States, and I object to any further proceedings.

Court: For reasons given before, the fact that this case was finally submitted, excepting as to the one thing which is not presented or in existence, the objection will be overruled. If the court is in a constitutional muddle, it did not get there from its own negligence.

Mr. Utt: It was the duty of the parties in this case to bring in all the parties; they seek the destruction of the property, or seek to depreciate the property.

Court: No; I believe you seek a right to maintain, rather than they seek the right to destroy.

Mr. Utt: We now take the position that, under the rights that were granted by the territorial Legislature of Iowa in 1839, which is now of record, this court has no power at this time to make an order to reduce the height or to change the dam as it now stands, and that if the court does proceed further in this direction that it is in contravention of the Constitution of the state of Iowa and of the fourteenth amendment to the Constitution of the United States.

Court: This court is upon the eve of adjourning *sine die*, and will in two days take up its regular work at Burlington, and the next term which the presiding judge of the court will hold in this county will commence in the latter part of September in the present year, and it suggests itself to the mind of the court that this plea now being filed, while it may present matters as to the right of bondholders, does not preclude the court from the right to determine and pass upon the matters already submitted to it and that affect the rights of the parties.

Counsel for plaintiff offered to appear at any special time the court would set. We have not set out all that occurred between the court and counsel, but the substance of it.

The proposed amendment to the reply of plaintiff to the objections and answers of the defendants refers to the alleged fact that about November 15, 1910, the plaintiff authorized and directed the issue of a series of its corporate bonds not exceeding $650,000, and that on said date it executed and delivered to the Central Trust Company, of Illinois, as trustee,

its certain mortgage or deed of trust. The matters are set out at some length, but the substance of the claim is, that the court had no authority to proceed until the said mortgagee or trustee had been made a party and brought into the case. It will be noticed that this matter is set up in a proposed reply, rather than an amendment to the petition. Counsel for appellees make no point that this is so, and the contention of appellant is that it is only necessary to call the court's attention to the matter.

Thereupon the court rendered its opinion and ordered a decree. The substance or material parts of the decree are:

That the court finds the equities of the case are with the defendants, and finds the facts and the law governing the case to be as set forth in the written opinion of the court this day filed, which is referred to and made part of the decree. It is therefore ordered, adjudged, and decreed that the plaintiff remove the top of said dam down to a point six inches below the line of cleavage between the dam as first constructed and the last addition built thereon, said line of cleavage to be determined by the average line of cleavage of the north half of the dam, within twenty-five days from this date, and that upon its failure so to do the sheriff of Henry county, Iowa, shall proceed to immediately remove same, and that the costs and expense of removing same be reported to the clerk of this court and be taxed as part of the costs in this case against the plaintiff. It is further ordered, adjudged, and decreed that if, upon the removal of the top of said dam, there are found to be conditions which will serve as a certain guide in fixing the old height of the dam lower than six inches of the line of cleavage aforesaid, that the defendants may, upon application and proper showing being made, have this case reinstated for the purpose of a further hearing upon the question of the lowering of said dam below the line herein fixed by supplemental decree, and that this decree shall in no way affect or supersede the order and decree heretofore entered in this case for the removal of the addition to the dam, which order and decree is dated October 31, 1911, which order and decree shall remain in full force and effect; that if said top of said dam, as herein ordered to be removed, is not removed

by the plaintiff within twenty-five days from this date, the clerk of the court shall issue execution to the sheriff of Henry county, Iowa, directing him to remove same in accordance with this decree—it being further adjudged and decreed that the right to issue execution under this decree shall in no way supersede the right to issue execution under the interlocutory decree entered October 31, 1911; that, the plaintiffs have a right to maintain said dam at the height of the old dam, said height being as fixed in the written opinion herein filed this day, and for maintaining said dam at said height the plaintiff shall not be liable in damages to any of the defendants, and the deposit of $350 is hereby released, that is, the $350 in the sheriff's hands.

Attorneys for plaintiff having announced in open court that they did not desire a decree for a license to maintain the dam at the height of the old dam, the same is omitted from this decree; that the dam and dam site herein referred to are the dam and dam site referred to in the deed to the Iowa Power Company, which deed is recorded in Book 108, page 344, of the Land Deed Records of Henry county, Iowa.

We shall later refer to so much of the opinion of the trial court as relates to the questions now assigned as error in this court. The errors relied upon by appellant are that the court erred in overruling plaintiff's motion to strike all the objections by defendants because they were prematurely filed; in overruling plaintiff's motion to strike from the prayer of all the objections and answers that part asking for an injunction; in overruling the motion to separate; in entering the interlocutory decree of October 31, 1911, because the same was indefinite, uncertain, and does not give the sheriff definite instructions, and leaves too many things for the sheriff to decide, and does not point out the thing to be abated; in entering the final decree, because it does not definitely point out the thing that the sheriff must abate, and because it leaves too many things for the sheriff to decide; in overruling the motion made by plaintiff for permission to file amended reply, and not requiring the Central Trust Company of Illinois to be brought in as

a party, and in refusing to permit plaintiff to offer testimony in regard to this matter; and, finally, that the court erred in refusing to permit plaintiff to amend the petition after the case had been submitted.

We shall refer to a part only of the findings and conclusions of the trial court, and such only as may bear upon the points now relied upon by appellant for a reversal. The plaintiff is a corporation, organized under the laws of another state, and it appears that it has complied with the provisions of our laws necessary to be observed that it may execute the purpose of its organization and transact business within this state. The court stated, and the evidence so shows, that:

Following the second amendment to the petition, a sheriff's jury was summoned and sworn, and, after investigation, fixed the damages due certain parties from the construction of the dam to its increased or present height resulting because of such increase above the level of the old or original dam. The damages thus assessed, as resulting from building to the present height above the height of the original dam, have not been paid or secured. The damages assessed as resulting from building to the height of the old or original dam have been paid to the sheriff.

And further:

It is pleaded by plaintiff that the dam as it now exists is higher than the old or original dam, which fact is undisputed; and it is conceded that, because of such, damage has been caused to some, if not all, of the defendants, and that this concession of damage relieves the court from investigating that feature of the case; . . . that the grant to Robert Wilson and his assigns in 1839 by the territorial Legislature, under which he acquired the right to build and maintain the dam at the place in question, was without limitation as to its height, and without express restriction as to the manner or purpose of its use, save as to certain conditions not material to this suit. Under this grant, a dam was built and maintained by Wilson and his assigns up to 1904 or 1905, the power produced by it being used in propelling mill machinery. The

grant was prior to our present statute (section 1921), and was no doubt made for the general, although not specific, purpose, of encouraging the building of a grist or other mill, at that time necessary to the comfort and welfare of citizens, and being then by the Legislature, and afterwards by Congress, recognized as a public use.

That in 1839 Skunk river was navigable, and no act of the territorial Legislature which would permit the obstruction of navigation would be authorized. The Wilson grant contained such requirements as to the maintenance of a lock as to avoid conflict with the laws under which the Legislature was then acting; such provision being made, together with the requirements that property owners whose lands might be affected by the building of the dam should be reimbursed for their damages. There was no legal impediment to the passage of the act, under which, upon compliance with its conditions, qualified private rights might be acquired. With this conclusion, it follows that Wilson and his assigns acquired rights which were the subject of transfer, and the plaintiff, being the holder by regular and consecutive conveyances, has such rights as Robert Wilson, had he not assigned them, would now hold under the legislative grant.

The court found:

That now, and for many years last past, Skunk river has not been navigable in fact, nor has it been so recognized by Congress, and that the provision as to the maintenance of a lock has no bearing upon the present controversy.

The court found that:

The right to reconstruct the dam had not been lost by abandonment, because the right to construct the dam at least up to the height in which it had been originally constructed and maintained was given by the special grant prior to the enactment of section 1931 of the Code, which is the section providing for abandonment or forfeiture of such rights.

And the court also found:

That the purpose for which the dam was rebuilt is in harmony with the terms of the original grant and is a public use, such as to entitle the plaintiff to maintain it at the height of the old or original dam, under the provisions of the Wilson charter, and that plaintiff, having obtained permission to transact business in this state, had the right to exercise the power of eminent domain, so far at least as the rights granted by the Wilson grant were concerned; that Skunk river, being now a nonnavigable stream, the title to its bed, and up to ordinary high-water mark, being yet, presumably, and so far as is shown, it is a constitutional exercise of power for the Legislature to make such provision for its use as may seem proper, provided that such be done without injury to land proprietors adjoining the river, and that it may also, where the use to which the stream is to be put is a public one, provide that if damages result therefrom they shall first be ascertained and paid or secured. . . . The grant to Wilson having fixed no limit as to the height of the dam, plaintiff's rights, so far as they depend upon that grant, must be determined by the height at which it was actually and ordinarily maintained. Such right is in a sense prescriptive. As has been previously stated, the determination of that fact is made extremely difficult, particularly because plaintiff, before having its rights determined, proceeded to rebuild the dam at what it claims to have been the old or original height, and also, without license first had, made additions thereto, resulting in conceded damage to the defendants, which work has so hidden old marks and bearings that precise finding cannot be had. As the ordinary rule of procedure, and also because the present condition was caused by plaintiff, with defendants in no way being responsible therefor, the burden of proof is necessarily upon the plaintiff to show the height to which it was entitled to build under the Wilson charter.

I find abundant proof to satisfy me that the dam as first constructed by plaintiff was higher than the old dam. Plaintiff has not only failed to show that the first construction by it was not higher than the original dam, but rather the preponderance of the evidence shows the contrary. . . . It appears in the evidence and in the pleadings of plaintiff that its claim is of a right to build under the Wilson charter to a height of seven feet ten inches; measurements taken at thirteen different points show an increase in height, the highest

increase being of six inches at points about thirty and fifty feet from the north end of the dam. The least increase was about sixty feet from the north end, being five and seventy-eight one-hundredths inches. Four other measurements show an excess in height of over five and one-half inches—four more exceeding five inches and less than five and one-half inches, and three measurements less than five inches. To fix as the standard of the old height the average of these various measurements would be to authorize that which has not been secured by grant or acquired by prescription; for the obstruction of water must, in large degree, although not entirely, be measured from the lowest point of the dam, which would constitute the efficient height. So far as I can, with reasonable satisfaction, determine from the evidence presented, and in the absence of that proof which probably once could have been had, but is now not available, I conclude that plaintiff, in rebuilding the dam, erected it approximately at least six inches higher than it had the right to do. I do not by this mean to say that such fixes with certainty the old or original height. If, upon the removal which will be ordered by the decree, that which is here found to be the least in the excess of height, there shall be revealed conditions which will serve as a certain guide in fixing the old height at less than is now found, then this cause, upon application first being made, with proper showing, may be reinstated for the purpose of such supplemental decree as will be just. But the findings herein announced, under the record as now made as to all facts and conditions bearing upon the height of the dam, constitute the judgment of the court. There is but little, if any, question under the evidence as to the extent of the addition which was made to the dam after its reconstruction by plaintiff. It varies from at least one and eight-tenths feet to two and five-tenths feet. This addition, as appears from the evidence and from an inspection of the dam, seems to be clearly marked, and no difficulty will be had in determining the line of separation.

The court stated that plaintiff's prayer that it be granted a license to maintain the dam at its increased or present height has not been withdrawn, and is yet a feature of the case to be considered. But it should be said that in this court appellants state specifically that they claim no right under or by reason

of any claimed right of eminent domain, but claim under the Wilson grant alone. The opinion of the trial court continues:

It is urged by plaintiff that, in building the dam to its increased height it acted strictly within the authority granted in the franchise to Robert Wilson and his assigns.

And, as we have already stated, the plaintiff's position in this court is that they claim under the Wilson grant alone.

The conclusion of the trial court was that, giving to the Wilson grant the broadest construction of which it is fairly capable, that so far as it relates to the height of the dam no greater rights could arise than, in their interpretation of the act by long-continued use and maintenance, he and his assigns gave it.

1. WATER POW-
ERS: dams:
prescriptive
rights.

We may say here that it is asserted by appellant that Robert Wilson and his assigns have the right to build a dam to any height they may see fit, because the charter is an irrevocable contract, and that at the time the act was passed the power of the Legislature was unlimited and supreme. It seems to be settled that, if appellant claims the right by prescription, this right would be no greater than the height of the old dam as used for the prescriptive period. *Gibson v. Fischer*, 68 Iowa, 29, 36.

The erection above the height of the dam as so maintained would not be an exercise of charter rights, but in excess of them. But, as we understand appellant's contention, it now bases its right solely upon the charter to Wilson, and it argues that this charter was granted before the Iowa Constitution, and hence gives it the right to take private property without compensation. Authorities cited by appellees, and some of those cited by appellant, hold that defendants needed no constitutional declaration to protect them in the use and enjoyment of their property against any claim or demand of plaintiff to appropriate the same to its use or the use of the public; that to be thus protected and thus secured

2. SAME: legisla-
tive grant:
eminent do-
main: compen-
sation.

in the possession of their property is a right inalienable, a right which a written constitution may recognize or declare, but which existed independently of and before such recognition, and which no government can destroy. Furthermore, the charter itself did not attempt to confer any such power upon Robert Wilson, but provides that he must get the consent of the owners of the land, and hence was not an attempt to take the property of others for the benefit of Robert Wilson or the public, but was a specific declaration that nothing in the act authorized Robert Wilson, his heirs or assigns, to enter upon and flow, which is equivalent to the taking of, their land without their consent.

The opinion of the trial court continues as follows:

Having already done that which caused an appropriation of upper lands and damage to the owners, it was an immediate —indeed, a delayed—duty for the plaintiff to forthwith pay or secure the damages so caused and assessed. Failing in that, the constitutional requirement that assessed damages should be first paid, or secured to be paid, before the property should be actually taken, was not observed. Plaintiff, therefore, is in the position, so far as it relates to the increased height of the dam, of having, without right, created conditions which have resulted in injury to the property of others, and of now asking the court, in effect, to confirm its act, and to grant it license to continue such condition without paying damages or tendering security for the payment. A statement of this condition seems to me, without argument, to suggest the answer which a court of equity must give to such prayer. It cannot be granted. Plaintiff will, however, be granted license to maintain the dam at its old or original height, as herein determined, as the successor in right to the Wilson grant, subject to such further order, if any, as may be made by supplemental decree, conditional upon the immediate removal by plaintiff of all that part of the dam originally constructed by it in excess of the old or original height as herein found. This finding is not intended to supersede nor in any way affect the order heretofore entered in this case for the removal of the addition to the dam, which order remains in full force, and

the duties of the sheriff thereunder are to be determined by
the interlocutory decree of October 31, 1911.

We have, perhaps, referred to more of the matters dis-
cussed by the trial court in its opinion than necessary, in view
of the points now relied upon by appellant; but by so doing
we answer some of the points suggested in argument, though
not assigned as error. It seems that, after the reading of the
opinion by the trial court, and before the decree was prepared,
plaintiff stated in open court that it did not desire a license,
which matter is referred to in the decree; but the finding in
the decree itself held that it has the right to maintain the dam
to its original height.

II. Going now to the points or errors relied upon by
appellant for reversal, we will discuss them as near as may
be in their order. The appellant has argued the several rul-
ings of the court on motions together and in
one subdivision of its argument. The first is
that the court erred in overruling the motion
to strike out all objections of the defendants on the ground
that they were prematurely filed.

3. SAME: con-
demnation pro-
ceedings: ob-
jections.

The contention by appellant is, as counsel state it, that the
proceeding started by plaintiff up to this time was a mere
inquisition—a mere proceeding to assess damages; that it was
not a suit in court, and would not become one until after an
appeal had been taken and a report to the sheriff filed with the
clerk of the court; that the orders were to be made by the
clerk, and it was the sheriff's duty to select, impanel, and at-
tend the jury; that the court had nothing whatever to do. They
contend that the sections of the Code (sections 1921, 1922,
1924, 1926, 1927, and 1928) relating to this proceeding spe-
cifically name the pleadings to be filed and point out what they
shall contain, and also the duties of the clerk and the sheriff;
that it is a special proceeding, for a special purpose, and the
mode and manner of procedure, from beginning to end, is
specifically pointed out by the Code; that section 1927 provides

that when the report of the jury is filed the clerk shall issue an order, directed to the defendants, requiring them to appear at the next term of court and show cause why a license should not be granted to construct or heighten the dam, etc., and that section 1928 provides that the defendants may file any objections they see proper to the prior proceedings or to granting the license; that the petition and objections shall constitute the pleadings.

It is contended that, because of these provisions, the objections should not have been filed until after the jury had made a return as to the damages. One trouble with this contention is that when the original petition was filed plaintiff was endeavoring to obtain a license without a sheriff's jury being called to assess damages, for it alleged that it had waivers and consent from all persons who would be affected. Such alleged waivers and consent did not contain the names of those persons who filed the objections. The petition did not ask for the appointment of a jury, but claimed the right, under the Wilson charter, to a license without calling a jury. Four separate objections and answers, in which affirmative relief was asked, had been filed by landowners other than those named by plaintiff in the petition, and plaintiff had filed a reply thereto, in which plaintiff took issue as to the affirmative matters set up in the objections and answers. This was the situation before there was any change in the petition. Thereafter plaintiff amended its petition, asking the appointment of a jury, and then similar objections and answers were filed by others.

We would be inclined to hold, if the point was made, that by filing the reply to the objections and answers plaintiff waived the motion; but that point is not made. But for such objections, plaintiff would have, in all probability, been successful in obtaining a license without any jury, in which case, according to plaintiff's theory, defendants would not have had any right at any time to file objections. But, in addition to this, it is very clear that these objections were not the objec-

tions contemplated by the statute. As stated, plaintiff was then claiming under the Wilson charter, which provided:

Nothing herein contained shall authorize the individual named in this act, his heirs or assigns, to enter upon and flow the lands of any person, without the consent of such person, etc.

The persons then objecting had not been made parties. They voluntarily appeared and filed their objections to show that they did not consent to the flowing of their lands as they claimed the construction of the dam would do. The answers and so-called objections were more than mere objections; they contained certain allegations denying the right claimed by plaintiff, and asked affirmative equitable relief. Plaintiff's petition was irregular, if it claimed any right under such special proceedings or under the right of eminent domain; and we think under the record, it was not then making such a claim. It may be said that the filing of the objections was somewhat irregular; still they were not, under the circumstances, premature.

In addition to this, while plaintiff has paid the damages assessed for reconstructing the dam to the height to which it was originally constructed, it has not paid or secured the larger damages awarded by reason of the added height. Plaintiff now says in argument in this court, specifically, that it makes no claim to any right because of condemnation proceedings. Defendants assert in argument, and plaintiff admits, that it has abandoned any claim to any right by virtue of condemnation proceedings.

A part of what we have said applies to the order overruling plaintiff's motion to strike that part of the objections and answers asking for an injunction. It is true the answers and objections were not denominated cross-petitions, yet facts were therein alleged entitling defendants to equitable relief. Defendants were claiming that plaintiff was a trespasser; that it

4. SAME: injunction: jurisdiction.

was maintaining a nuisance by obstructing a stream without any right or authority to do so. Plaintiff had not paid or secured the damages assessed by the jury occasioned by the increased height of the dam, and it has been held that a railway so failing to pay or secure the amount assessed by the jury may be restrained.

Without attempting to give all the reasons appearing in the record, it is clear from a reading of the pleadings and proceedings, which we have set out fully, that as the case progressed it developed into an equitable action pure and simple, and was so treated by all parties and the court, and that the issue, or at least one of the principal issues, was that defendants were claiming that plaintiff had no right to maintain the dam, and asking an order of abatement of the dam as a whole, or, in any event, that part above the height at which it had been originally constructed. Plaintiff was resisting these claims of defendants, and seeking to maintain its claimed rights in the dam. It will be remembered that before the trial plaintiff had constructed the dam to its present height of some two and one-half or three feet above the height at which it had been originally constructed.

In addition to the matters just referred to, it should be stated that plaintiff filed the following election and motion:

Comes now the plaintiff herein and elects to take its testimony in this cause by deposition, and asks that it be given time to take its testimony in said manner, and further asks that an order be made that plaintiff's testimony be taken in the form of depositions,

—thus treating the cause as in equity. This motion was made before plaintiff filed its motion to strike the prayer for an injunction. The motion of plaintiff to take its testimony in the form of depositions was overruled, but of this plaintiff does not complain. The cause was later ordered tried as an equitable action, and there was no objection or exception thereto.

It is said by appellant that defendants should have sued

for damages, and that such remedy is exclusive; but we think upper proprietors suffering damages of such acts done by plaintiff beyond the charter rights would not be compelled to assert their claims in that manner. They might do so if they so elected, but they may depend upon the safeguards provided by the Constitution in such cases, as supplemented by legislative enactments and the decisions of the courts.

5. SAME.

There was no error in overruling plaintiff's motion heretofore set out, in which plaintiff asked that each of the defendants be required to file separate petitions. The motion itself shows that at that time the court had decided that the cause was for trial on the matter of injunction. It has been held that different property owners may join in asking for an injunction when suffering from the same nuisance, though in different degrees. *Bushnell v. Robeson,* 62 Iowa, 540.

6. SAME: injunction: parties.

Other reasons are argued, and authorities cited on these points; but we shall not take the time or space to prolong the discussion thereof.

III. Appellant complains of the interlocutory decree. Its counsel again argue that the court had nothing to do with the matter at the time such order was made, because it was a special proceeding under the law relating to condemnation of property. If this be true, there could be no prejudice to plaintiff in so far as the order required plaintiff to have damages assessed by the sheriff's jury,. for the reason that plaintiff was or seemed then to be proceeding under condemnation proceedings, and, if so, it was its duty to call a sheriff's jury and pay or secure the damages. So far as this feature is concerned, the order seems to have been by agreement. Plaintiff had amended its petition after objections were filed, and asked that a jury be summoned and the damages assessed. In such amendment it was alleged that plaintiff had, since filing the original petition, rebuilt the dam to the height of the old

7. SAME: condemnation: order for assessment of damages: prejudice.

dam and desired to increase the height two feet. At that time there had been a partial hearing; the case was in equity, and there was a controversy as to what the rights of the parties were, which could not be determined until final hearing; defendants were asking a temporary injunction to prevent plaintiff proceeding at all until it had complied with the law in having damages assessed and paying or securing the payment of such damages. The purpose of the order was to abate the nuisance already created, unless plaintiff should do what it was required by law to do. It had not yet been determined that plaintiff was entitled to rebuild the dam at all, even to its original height, although plaintiff had gone on and built it that far. The order provided that if plaintiff did not proceed as the law required the sheriff should abate the conditions resulting in the damage to defendants. The cause of the damage was then definitely known. It was the rebuilding of the dam as far as it had then been rebuilt, and this had been done without authority in so far as the right to rebuild under condemnation proceedings was concerned. True, it was subsequently determined that plaintiff had the right to so rebuild to the original height under the Wilson grant. The plaintiff did finally base its right under that grant, and that is its claim in this court.

Plaintiff did have the assessment made, but failed to pay or secure all the damages assessed. The order provided that the money paid in, if any, should be held until final decree, and when the final decree was entered the money so deposited was released.

The real point here, as contended for by appellant, is, as we understand the argument, that the interlocutory order and final decree are so indefinite that the sheriff could not tell what he was required to do, and that it left matters

8. SAME: injunction: decree: indefiniteness.

open to be determined by the sheriff. We have already disposed of that point as to the supposed indefiniteness of the interlocutory decree. The final decree leaves the first order in force, but makes more specific

the duty of the sheriff as to the part of the dam he is to remove. He is to take off the last addition to the dam, which was plainly observable, and six inches below that. This was the judgment of the court, based upon the evidence, and is definite and certain. But in rebuilding the dam to its old or original height the logs, timbers, and stone had been covered and concealed by cement. Because of this, and because there might be conditions disclosed in removing the top of the dam making certain matters which were not certainly established by the evidence, a provision was inserted in the decree that if it was found by the sheriff when he removed the top of the dam that the finding as to the six inches was not correct, then the matter could be presented to the court for supplemental hearing. Such supplemental hearing and any further or different finding was to be done by the court, and not by the sheriff. A court of equity, having once acquired jurisdiction, will retain it until the controversy is finished and complete justice done between the parties. *McDowell v. Lloyd*, 22 Iowa, 448; *Hirschl v. Hirschl*, 161 Iowa, 647.

IV. Finally, it is contended that the mortgagee, the Central Trust Company of Illinois, was a necessary and indispensable party to the action, and that the court should have ordered it brought in, and, if that could not be done, that the proceeding should have been dismissed; that the court had no authority to proceed unless the mortgagee was brought in. The contention is that the trust company, as mortgagee or trustee for the bondholders, by virtue of the mortgage deed, is an owner of the property, and that a partial destruction of the dam is a taking of its property without due process of law and violates the state and federal Constitution; that the trustee is entitled to have an opportunity to be heard. Many cases are cited by appellant holding that the court may not proceed where necessary and indispensable parties have not been brought in, and some of the cases hold that this is so, even though such party is outside the jurisdiction of the court.

9. SAME: injunction: parties.

Appellees contend that the mortgagee is not an owner of the property and is not a necessary party; that even though it were so, it is not shown that the trust company is within the jurisdiction of the court and amenable to its process. They contend that the rule contended for by appellant does not apply unless it is so shown. They argue that there is no reason for the court to order a party brought in and made a party to the suit, where the process of the court could not reach him or bring him in. Cases are cited supporting this position of appellees, among them *Searles v. Insurance Co.*, 148 Iowa, 65.

Appellees also contend that the mortgagee can have no greater rights than the plaintiff company which has unlawfully constructed the dam to a greater height than the original dam and is so maintaining it, and that to hold that the mortgagee is a necessary party and to dismiss the case if such mortgagee cannot be brought in would be a denial of justice to them and deprives them of all remedy, even though plaintiff should flow their lands to such an extent as to destroy their property. But we need not determine this point because we are of opinion that the mortgagee, as between the parties to this action, is not an owner and is not an indispensable party.

We are cited to *Danner v. Hotz*, 74 Iowa, 389; *Shear v. Green*, 73 Iowa, 688, and *Denmead v. Parker*, 145 Iowa, 581, where it is held that before a liquor nuisance may be abated and a building closed for a year, or the property held for costs and attorney's fees, the owners of the real estate are necessary parties. But our attention has not been called to any case holding that in such a case a party having a mortgage on the realty is a necessary party. Closing the building might affect the mortgagee's lien, but the controversy between the other parties could be determined without the mortgagee being in court. Code, section 3466, is cited. It provides:

The court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy between the parties before the court

cannot be made without the presence of other parties, it must order them to be brought in.

Under this statute, other parties must be brought in only when a determination of the controversy between the parties before the court cannot be made without the presence of other parties. The controversy between plaintiff and the defendants in this case was in regard to claimed rights in a dam or to rebuild it, or increase the height, and whether it was a nuisance, etc. A determination of such questions can be made without the presence of the mortgagee. There is no claim that the trust company claims any right to construct or heighten the dam or to maintain it. As bearing strongly on the proposition now under consideration, see *Searles v. Insurance Co., supra.*

Iowa cases are cited holding that a mortgagee of real estate should be made a party to condemnation proceedings. This is not on the theory that the mortgagee is an owner, but for the reason that when mortgaged lands are to be taken in such proceedings, if the damages awarded by the sheriff's jury should be paid direct to the mortgagor, there might not be sufficient security for the debt. But, even then, the party taking the property would take it subject to the mortgage. But this rule, if applicable here, would only apply to mortgagees of the defendant landowners, and not to the mortgagee of the party who instituted condemnation proceedings.

It has been held in numerous cases where railroads have taken possession of property and constructed their right of way, without having paid compensation as provided by law, that they are trespassers and not entitled to the protection of the court. But we are not advised of any requirement of the law that bondholders of the railroad were held to be necessary parties. So far as we are advised, no question has been raised in any of those cases that the rights of the bondholders of the railway company were thereby impaired.

The following cases are cited as holding that a mortgagee

is not an owner of the mortgaged real estate, and that the mortgage is a lien only, and not an interest in the property: *White v. Rittenmyer,* 30 Iowa, 268; *Newman v. De Lorimer,* 19 Iowa, 244;*Robertson v. Moline Co.,* 88 Iowa, 463; *Devine v. Hendershott,* 32 Iowa, 196; *Hubbard & Spencer v. Hartford Fire Ins. Co.,* 33 Iowa, 333; *Oskaloosa Water Co. v. Board,* 84 Iowa, 412; *Boggs v. Douglass,* 105 Iowa, 346; *Busch v. Hall,* 119 Iowa, 282; *Adams v. Holden,* 111 Iowa, 54. See, also, Code section 2922.

Cases are cited by appellees which hold, as they claim, that the trust company is bound by the decree, although not made a party; but this we do not feel called upon at this time to determine. Appellees base this claim upon the theory—or partly so, at least—that the trust company took its mortgage after this suit was instituted and while it was still pending. On this point the record shows that the mortgage or trust deed was filed for record June 8, 1911; but it appears to have been executed November 15, 1910, which was before the petition was filed. Only the record of the mortgage was offered in evidence, and a copy is not contained in the abstract.

Having determined that the trust company is not an indispensable party, it is unnecessary to discuss the alleged error of the court in refusing the offer of plaintiff's counsel to introduce evidence relating to the giving of the trust deed and the number of bonds outstanding.

We are of opinion that the decrees of the trial court were right and ought to be affirmed. If plaintiff had, as it at first seemed to do, claimed the right to build the dam above its original height, under condemnation proceedings, it should have paid or secured the damages assessed by the sheriff's jury for such excess height; but it had the right to claim the right to build the dam to its present height under the Wilson grant. This is what it did finally base its right upon. It has not paid or secured such larger damages, and says it has abandoned such condemnation proceedings as to such larger amount for such excess height. Such contention as to its claimed rights

under the Wilson grant as to such excess height has now been determined against plaintiff.

Plaintiff may, if it so elects within thirty days from and after the filing of this opinion, proceed to promptly recondemn by calling another sheriff's jury to assess such damages, and pay or secure the same in the manner provided by law, for rebuilding the dam above the original height as found by the final decree. Failing in this, the time fixed in the decree for the removal of the top of the dam having expired, such time so fixed is now extended ninety days from the filing of this opinion. If plaintiff fails to proceed to again condemn as herein provided, or to remove the dam, the sheriff will at the end of ninety days proceed as directed in the final decree rendered by the district court. In all other respects the judgments and decrees appealed from are as to both appeals affirmed. Because of the provision in the final decree in regard to a possible further hearing and the modification herein, the cause is remanded.

The appeals were submitted to the full bench. All the Justices concur, except WITHROW, J., who took no part.— *Modified* and *Affirmed.*